IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**VLSI TECHNOLOGY LLC,**

    **Plaintiff,**

v.                                    Civil Action No. 3:24-cv-213

**PATENT QUALITY ASSURANCE, LLC,**

    **and**

**JOSPEH URADNIK,**

    **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff VLSI Technology LLC's ("VLSI") Motion to Remand (the "Motion"). (ECF No. 15.) Defendants Patent Quality Assurance, LLC ("PQA") and Joseph Uradnik (collectively, "Defendants") filed a brief in opposition, (ECF No. 25), and VLSI replied, (ECF No. 26). The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. Accordingly, this matter is ripe for disposition. For the reasons articulated below, the Court will grant VLSI's Motion, (ECF No. 15), and remand this action to the Circuit Court for the City of Alexandria. The Court will deny as moot Joseph Uradnik's Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(6), (ECF No. 3), PQA's Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(6), (ECF No. 5), and Defendants' Motion for Leave to File PQA's Revised Financial Interest Disclosure Under Seal and For Other Relief. (ECF No. 31).

## I. Factual and Procedural Background

### A. Summary of Allegations in the Complaint[1]

#### 1. VLSI's Suit Against Intel in the Western District of Texas

On April 11, 2019, VLSI filed suit in the United States District Court for the Western District of Texas ("Western District of Texas") against Intel Corporation ("Intel"). (ECF No. 1-1 ¶ 20.) VLSI's complaint "alleged that Intel infringed multiple semiconductor technology patents owned by VLSI, including U.S. Patent Nos. 7,523,373 (the '373 Patent') and 7,725,759 (the '759 Patent')." (ECF No. 1-1 ¶ 20.) In late 2019 and early 2020, Intel filed inter partes review ("IPR") petitions with the Patent Trial and Appeal Board (PTAB) alleging that the '373 and '759 Patents were invalid. (ECF No. 1-1 ¶ 21.) The PTAB declined to review the petitions on the basis that the lawsuit in the Western District of Texas was nearing trial and any PTAB proceedings would be duplicative of that court's assessment of the patents' validity. (ECF No. 1-1 ¶ 21.)

On March 2, 2021, in the Western District of Texas action, the jury returned a verdict for VLSI, awarding VLSI $1.5 billion in damages for Intel's infringement of the '373 Patent and $675 million in damages for Intel's infringement of the '759 Patent. (ECF No. 1-1 ¶ 22.) On April 21, 2022, the Western District of Texas entered final judgment for VLSI, specifically finding that "Intel was found to have infringed all claims at issue in the '373 and '759 Patents",

---

[1] "'On a motion to remand, because the burden to prove jurisdiction rests on the party opposing remand, the facts are stated in the light most favorable to the party seeking remand.'" *Simpkins v. SunTrust Mortg., Inc.*, No. 2:12cv264 (MSD), 2013 WL 1966904, at *1, n.1 (E.D. Va. May 7, 2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

and entering judgment against Intel "on its counterclaims of invalidity of the '373 and '759 Patents[.]" (ECF No. 1-1 ¶ 23.)

### 2. Patent Quality Assurance, LLC is Created and Files an Inter Partes Review Petition Challenging VLSI's '373 Patent

On June 14, 2021—approximately three months after the jury verdict against Intel—a company known as Northwest Registered Agent, LLC formed an entity called Patent Quality Assurance, LLC ("PQA") in South Dakota. (ECF No. 1-1 ¶¶ 26–27.) VLSI alleges that "PQA does not make, use, sell, or import any products, let alone any products that could subject it to claims of infringement of VLSI's patents." (ECF No. 1-1 ¶ 32.) Less than a month after it was formed, on July 7, 2021, PQA filed an IPR petition with the PTAB challenging the validity of the '373 Patent. (ECF No. 1-1 ¶ 33.) In support of its petition, PQA filed a declaration of Defendant Joseph Uradnik, in which he said that PQA was "'owned and managed exclusively by its members'" but did not disclose the members' identities. (ECF No. 1-1 ¶ 34.) PQA's IPR petition stated that its purpose was "'to instill confidence in the integrity of the patent system and to ensure that innovative U.S. companies (and their consumers) are not unfairly taxed by entities asserting invalid patents.'" (ECF No. 1-1 ¶ 35.) VLSI alleges that "PQA's petition was almost a verbatim copy of the IPR petition that Intel filed in 2019 challenging the '373 Patent, which the PTAB had declined to institute." (ECF No. 1-1 ¶ 35.)

### 3. PQA's Actions Regarding OpenSky Industries LLC's Parallel Inter Partes Review Petition

Before PQA filed its IPR petition, an entity known as OpenSky Industries LLC ("OpenSky") filed a similar IPR petition with PTAB also challenging the validity of VLSI's '373 Patent. (ECF No. 1-1 ¶ 37.) OpenSky attached to its petition a declaration by a technical expert, Dr. Adit Singh, which originally "had been prepared for Intel and filed with its failed 2019 IPR."

3

(ECF No. 1-1 ¶ 39.) VLSI alleges that PQA and Joseph Uradnik "misled the PTAB to get it to dismiss OpenSky's IPR petition" so that PQA—not OpenSky—would financially benefit from any settlement with VLSI. (ECF No. 1-1 ¶¶ 39, 42.) PQA represented to the PTAB that it had "'exclusively'" retained Dr. Singh as an expert and argued that its petition should be granted over "OpenSky's earlier-filed petition because OpenSky could not present Dr. Singh for cross-examination." (ECF No. 1-1 ¶ 40.) "[O]n December 23, 2021, the PTAB concluded that OpenSky's '373 petition did not warrant institution based on PQA's representation that OpenSky would have been unable to engage Dr. Singh." (ECF No. 1-1 ¶ 40.)

After OpenSky's petition was dismissed, "PQA communicated to VLSI that it was willing to dismiss its own IPR petition . . . in exchange for exorbitant amounts of money." (ECF No. 1-1 ¶ 45.) During settlement discussions, "PQA refused to bind its principals to any settlement or [] identify to VLSI who its principals were." (ECF No. 1-1 ¶ 48.) PQA "further threatened . . . [to] file a motion to join the Open[S]ky IPR [petition] seeking to invalidate the other patent underlying the verdict against Intel—the '759 Patent" unless VLSI "pa[id] off PQA." (ECF No. 1-1 ¶ 46.) After "VLSI would not cave to their demand, PQA petitioned to join OpenSky's IPR [petition] seeking to invalidate the '759 Patent", but voluntarily withdrew its joinder petition two days before the PTAB's deadline to rule on the motion, after VLSI had "expend[ed] attorneys' fees on briefing to oppose" the joinder petition. (ECF No. 1-1 ¶ 46.) On January 26, 2022, "the PTAB instituted PQA's IPR [petition] seeking to invalidate the '373 patent" and granted Intel's request to join the IPR proceeding. (ECF No. 1-1 ¶ 49.)

### 4. The PTAB Discovery Process and Final Decision on PQA's Inter Partes Review Petition

During discovery pursuant to PQA's IPR petition, on May 5, 2022, VLSI deposed "PQA's purported spokesperson Joseph Uradnik, who had filed [a] declaration in support of

4

PQA's petition", "to learn basic facts about PQA's formation, its membership, and its reasons for challenging VLSI's patent." (ECF No. 1-1 ¶¶ 50–51.) VLSI alleges that this information was "relevant and important" because "if it turned out that Intel and PQA had coordinated their [IPR] petitions to circumvent the time bar on Intel's petition, Intel [] could have been dismissed from the proceedings or the IPR could have been de-instituted." (ECF No. 1-1 ¶ 50.) Mr. Uradnik refused to answer questions regarding the members of PQA, the persons who had a financial interest in PQA, whether PQA was formed to extort money from VLSI, and whether PQA had communicated with Intel before filing its IPR petition, stating that "he was 'not authorized to speak'" on those topics. (ECF No. 1-1 ¶¶ 52–55.)

VLSI also alleges that PQA used the PTAB's discovery process to increase VLSI's litigation costs despite the fact that the PTAB could not award PQA any compensation, nor could PQA be sued by VLSI for patent infringement if the PTAB found the '373 patent valid. (ECF No. 1-1 ¶ 56.) For example, PQA "deposed VLSI's expert", "sought for the USPTO to exercise its power to conduct an *in camera* inspection of documents VLSI logged as privileged", "filed a frivolous motion to expunge certain documents from the record", and "asked the PTAB to exercise its power to provide joined petitioner Intel with access to sealed material in the record." (ECF No. 1-1 ¶¶ 57–58.)

On June 13, 2023, the PTAB issued a final decision invalidating the challenged '373 Patent. (ECF No. 1-1 ¶ 72.)

5.  **United States Patent and Trademark Office's Review of the PTAB's Inter Partes Review Decision**

In response to a letter from two U.S. Senators expressing concern that PQA was abusing the IPR process to extort money from VLSI, "[o]n June 7, 2022, United States Patent and Trademark Office [("USPTO")] Director Vidal initiated Director review of the PTAB's decision

5

to institute PQA's IPR." (ECF No. 1-1 ¶¶ 60–61.) Director Vidal ordered the parties to file briefing answering certain interrogatory questions and ordered PQA to provide certain categories of documents to VLSI. (ECF No. 1-1 ¶¶ 61–62.) VLSI asserts that "Defendants willfully violated [Director Vidal's] discovery orders" by "fail[ing] to produce any responsive internal PQA documents" and providing answers to the interrogatory questions that Director Vidal found to be "unresponsive" and "insufficient." (ECF No. 1-1 ¶¶ 65, 67–68.)

Approximately eight months after final judgment was entered in the Western District of Texas case, "[o]n December 12, 2022, Director Vidal issued a decision finding that PQA abused the IPR process." (ECF No. 1-1 ¶ 69.) Director Vidal made the specific finding that PQA:

> abused the IPR process by advancing a misleading argument and a misrepresentation of fact by representing, in its Petition, that it had exclusively engaged Dr. Singh, a witness relied on by another party . . . OpenSky . . . in a parallel proceeding, and which representation it later qualified as *not* being an exclusive engagement.

(ECF No. 1-1 ¶ 69 (emphasis and ellipses in original).) Director Vidal also found that "'PQA abused the IPR process by filing this IPR, and threatening to file another IPR petition seeking to join a related, instituted IPR by OpenSky, in an attempt to extract payment from VLSI.'" (ECF No. 1-1 ¶ 69.) Director Vidal "concluded that PQA engaged in discovery misconduct by failing to comply with her mandated discovery order and inadequately responding to her interrogatories." (ECF No. 1-1 ¶ 69.) As a result, "Director Vidal dismissed PQA from the IPR"[2] but allowed the proceeding to continue with Intel as the sole petitioner, despite the fact

---

[2] "On January 27, 2023, Director Vidal restored PQA as a petitioner in the IPR solely for the purpose of retaining jurisdiction over PQA so that it could respond to an order to show cause for why it should not be further sanctioned." (ECF No. 1-1 ¶ 71.)

6

that, according to VLSI, Intel would have been time-barred from initiating the IPR on its own. (ECF No. 1-1 ¶ 70.)

After issuing "a decision sanctioning PQA for its misconduct," on December 13, 2023, Director Vidal issued a decision affirming the PTAB's decision to invalidate VLSI's '373 Patent. (ECF No. 1-1 ¶ 74.) She also "issued a 'strong admonishment to PQA for its conduct,'" but did not impose monetary sanctions on PQA, declining to decide "whether VLSI 'suffered . . . compensable injury stemming from PQA's alleged misconduct.'" (ECF No. 1-1 ¶ 74 (ellipses in original).)

### B. Procedural Background

On January 31, 2024, VLSI brought this four-count Complaint against PQA and Joseph Uradnik (collectively, "Defendants") in the Circuit Court of the City of Alexandria, Virginia, alleging abuse of process, common law fraud, statutory business conspiracy, and common law conspiracy. (ECF No. 1-1, at 63, 83–88.)

On March 20, 2024, Defendants filed their Notice of Removal. (ECF No. 1, at 1.) On April 9, 2024, VLSI filed its Motion to Remand. (ECF No. 15.) PQA filed a brief in opposition, (ECF No. 25), and VLSI replied, (ECF No. 26). Accordingly, the matter is ripe for disposition.

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons articulated below, the Court will grant VLSI's Motion, (ECF No. 15), and remand this action to the Circuit Court for the City of Alexandria.

### II. Legal Standard

Subject matter jurisdiction represents "a threshold issue," which courts must consider "before addressing the merits" of a claim. *Jones v. Am. Postal Workers Union*, 192 F.3d 417,

422 (4th Cir. 1999). Under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The party seeking removal bears the initial burden of establishing federal jurisdiction." *Abraham v. Cracker Barrel Old Country Store, Inc.*, No. 3:11-cv-182 (HEH), 2011 WL 1790168, at *1 (E.D. Va. May 9, 2011) (citing *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). No presumption favoring the existence of federal subject matter jurisdiction exists because federal courts have limited, not general, jurisdiction. *Id.* (citing *Pinkley Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999)). Courts must strictly construe removal jurisdiction. *Id.* (citing *Mulcahey*, 29 F.3d at 151). "'If federal jurisdiction is doubtful, a remand is necessary.'" *Id.* (quoting *Mulcahey*, 29 F.3d at 151).

A defendant may remove a civil action filed initially in state court if the plaintiff could have originally brought the action in federal court. *Abraham*, 2011 WL 1790168, at *2 (citing *Yarnevic v. Brink's Inc.*, 102 F.3d 753, 754 (4th Cir. 1996)); *see* 28 U.S.C. § 1441(a). This ordinarily requires the Court to have either federal question jurisdiction under 28 U.S.C. § 1331[3] or diversity jurisdiction under 28 U.S.C. § 1332(a)(1).[4] Here, PQA does not assert that the Court may exercise diversity jurisdiction over any claim in this matter.

---

[3] 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

[4] 28 U.S.C. § 1332 provides, in pertinent part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

(1) citizens of different States.

28 U.S.C. § 1332(a)(1).

8

A federal district court may exercise federal question jurisdiction over a complaint only "'when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Lee v. Citimortgage, Inc.*, 739 F. Supp. 2d 940, 943 (E.D. Va. 2010) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 12 (2003) (Scalia, J., dissenting)). To properly exercise federal question jurisdiction, the Court must first determine whether federal or state law creates the plaintiff's cause of action. *Mulcahey*, 29 F.3d at 151. In general, the well-pleaded complaint rule guides the Court's inquiry, which means that "courts 'ordinarily . . . look no further than the plaintiff's [properly pleaded] complaint.'" *Pinney v. Nokia*, 402 F.3d 430, 442 (4th Cir. 2005) (alteration in original) (quoting *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir. 1996)).

However, "where a claim finds its origins in state rather than federal law . . . [courts] have identified a 'special and small category' of cases in which arising under jurisdiction still lies." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* (summarizing the factors articulated in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

### III. Analysis

PQA does not contest that the four causes of action asserted by VLSI in its Complaint raise state law claims. (ECF No. 1, at 6.) Rather, PQA argues that the Court has subject matter jurisdiction because Plaintiff's "Complaint raises a substantial federal question[.]" (ECF No. 1, at 6.) Specifically, PQA contends that VLSI's "allegations of abuse of process" in Count 1 "raise[] a substantial federal question[.]" (ECF No. 1, at 6.) Next, PQA improperly attempts to add an argument via its opposition to VLSI's Motion to Remand that this Court has subject

9

matter jurisdiction because VLSI's fraud claim in Count 2 also raises a substantial federal question. (ECF No. 25, at 23.) PQA founders on both fronts.

PQA fails to meet its burden of establishing federal jurisdiction by showing that this case fits within the "special and small category of cases" of state law claims that turn on questions of substantial federal law. *Gunn*, 568 U.S. at 258; *see also Abraham*, 2011 WL 1790168, at *1. Thus, the Court will grant VLSI's Motion and remand this action to the Circuit Court for the City of Alexandria for further proceedings.

### A. VLSI's Right to Relief for its State Law Abuse of Process Claim Does Not Necessarily Depend on Resolution of a Substantial Question of Federal Law

The four-factor test established in *Gunn* guides the Court's analysis. Because VLSI's properly asserted state-law abuse of process claim does not "necessarily raise" a "substantial" federal issue, the Court declines to find that this case belongs to the "'special and small category' of cases" in which a state law claim can give rise to federal question jurisdiction. *Gunn*, 568 U.S. at 258.

#### 1. VLSI's Abuse of Process Claim Does Not Necessarily Raise a Federal Issue

VLSI's state-law abuse of process claim in Count 1 does not necessarily raise a federal issue. "A federal question is not 'necessarily' raised under § 1331 unless it is essential to resolving a state-law claim, meaning that '*every* legal theory supporting the claim requires the resolution of a federal issue.'" *Burrell v. Bayer Corp.*, 918 F.3d 372, 383 (4th Cir. 2019) (quoting *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (emphasis in original)).

In its Complaint, VLSI alleges one count of abuse of process against PQA related to its filing of its July 2021 inter partes review ("IPR") petition, and to PQA's conduct during the IPR proceedings. (ECF No. 1-1 ¶¶ 43, 77–78.) The elements of an abuse of process claim under

10

Virginia law are: "(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings." *Donohoe Const. Co., Inc. v. Mt. Vernon Associates*, 369 S.E.2d 857, 862 (Va. 1988). As to the second element, VLSI's Complaint alleges:

> Defendants' acts in the use of the processes and procedures were not proper in the regular course of the IPR proceedings, which included: repeatedly evading discovery and violating discovery rules; brazenly violating discovery orders; filing pleadings containing misrepresentations, including about who founded PQA and for what purpose, and PQA's relationship with its expert; serving unwarranted and harassing discovery on VLSI; and forcing VLSI to defend against frivolous motions.

(ECF No. 1-1 ¶ 78.)

PQA argues that the second element necessarily raises questions under federal law because "[a]ny determination that PQA used legal process in a way that is not proper 'in the regular prosecution of the [IPR] proceeding' necessarily hinges on the construction and application of federal laws and regulations governing IPR proceedings." (ECF No. 25, at 26.)

This Court, however, is persuaded by other courts who generally have held that a federal question is not raised by a state law abuse of process claim premised on abuse of a federal process. For example, in *Fouad v. Milton Hershey Sch. and Sch. Trust*, the court found that a claim of abuse of process[5] did not necessarily require analysis of any federal law. No. 1:19cv253, 2020 WL 5775018, at *9 (M.D. Pa. Sept. 28, 2020) ("it is the traditional tort principles of the existence of process, the defendant's motives, and the wrongfulness of the

---

[5] The court in this case analyzed the tort of abuse of process under Pennsylvania and New York law. While the precise elements of an abuse of process claim differ state-by-state, the underlying "tort principles . . . of the existence of process, the defendant's motives, and the wrongfulness of the defendant's actions" remain consistent under the laws of Pennsylvania, New York, and Virginia. No. 1:19cv253, 2020 WL 5775018, at *9 (M.D. Pa. Sept. 28, 2020).

11

defendant's actions that determine whether a defendant has abused process, none of which would necessarily require analysis of the Federal Rules of Civil Procedure or any other federal law"); *see also City of Greensburg v. Wisneski*, 75 F.Supp.3d 688, 695 (W.D. Pa. 2015) (finding that "a claim for abuse of process . . . does not raise any issue of federal law"). Similarly, the court in *Pollack v. Fournier* found that the plaintiffs' abuse of process[6] claim "does not necessarily raise a federal issue." No. 2:18-cv-308, 2019 WL 231767, at *4 (D. Me. Jan. 16, 2019).

PQA further argues that that VLSI's abuse of process claim "requires a determination of whether the Director Review was part of the regular prosecution of an IPR" and whether "the discovery issued by the Director was permitted in the regular prosecution of the proceeding." (ECF No. 1 ¶ 22.) While VLSI's Complaint includes allegations respecting PQA's conduct during the United States Patent and Trademark Office Director's review of the PTAB's decision to institute PQA's IPR, (ECF No. 1-1 ¶¶ 61–68), VLSI's abuse of process claim—which alleges that PQA "had an ulterior purpose in using the processes and procedures of *the IPR proceeding*" and that PQA's "acts in the use of the processes and procedures were not proper in the regular course of *the IPR proceedings*"—centers around PQA's institution of, and conduct during, the IPR proceedings themselves. (ECF No. 1-1 ¶¶ 76–80 (emphasis added).) Thus, a court's analysis of VLSI's state law abuse of process claim does not, as PQA argues, "require[] a determination of whether the Director Review[7] was part of the regular prosecution of an IPR."

---

[6] The court in this case analyzed the tort of abuse of process under Maine law, which requires a plaintiff to show that a defendant "initiated or used a court document or process in a manner not proper in the regular conduct of proceedings[.]" 2019 WL 231767, at *4 (quoting *Tanguay v. Asen*, 722 A.2d 49, 50 (Me. 1998)). Notably, this language mirrors the second element of abuse of process under Virginia law: "an act in the use of the process not proper in the regular prosecution of the proceedings." *Donohoe*, 369 S.E.2d at 862.

[7] Indeed, any determination respecting whether Director Vidal "exceeded her authority in the Director Review", (*see* ECF No. 1, at 4), has no bearing on the issue of whether *PQA*

12

(ECF No. 1 ¶ 22.) Therefore, even assuming that the issues that PQA raises related to USPTO Director Vidal's review of PTAB's decision to institute an IPR proceeding involve a federal question, the federal question is not necessarily raised because it is not "essential to resolving [the] state-law claim." *Burrell*, 918 F.3d at 383.

### 2. Even Were the Abuse of Process Claim to Necessarily Raise a Federal Issue, It Would Not Be "Substantial"

While PQA's failure to establish the first *Gunn* factor is fatal, even were the Court to turn to factor three, PQA would fail.[8] Presuming PQA could establish that VLSI's abuse of process claim requires "a determination of what constitutes the regular prosecution of IPR proceedings and whether PQA's actions therein were improper", (ECF No. 1, at 7), that would not be a *substantial* federal issue. As the Supreme Court explained in *Gunn*, "[t]he substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system *as a whole*." 568 U.S. at 260 (emphasis added). The *Gunn* Court provided two cases that illustrate the narrow scope of what constitutes a substantial federal issue. The context surrounding those cases demonstrates why PQA falls short on raising a substantial federal issue here:

> In *Grable* itself, for example, the Internal Revenue Service had seized property from the plaintiff and sold it to satisfy the plaintiff's federal tax delinquency. Five years later, the plaintiff filed a state law quiet title action against the third party that had purchased the property, alleging that the IRS had failed to comply with certain federally imposed notice requirements, so that the seizure and sale were invalid. In holding that the case arose under federal law, we primarily focused not on the interests of the litigants themselves, but rather on the broader significance of the notice question for the Federal Government. We emphasized the Government's "strong interest" in being able to recover delinquent taxes through seizure and sale of property, which in turn "require[d] clear terms of notice to allow buyers ... to

---

committed "an act in the use of the process not proper in the regular prosecution of the proceedings." *Donohoe*, 369 S.E.2d at 862.

[8] The Court will not address the second and fourth factors of the *Gunn* analysis in detail. Failure to satisfy any factor of that test deprives the Court of federal jurisdiction, and PQA plainly cannot meet the first and third factors.

satisfy themselves that the Service has touched the bases necessary for good title." The Government's "direct interest in the availability of a federal forum to vindicate its own administrative action" made the question "an important issue of federal law that sensibly belong[ed] in a federal court."

A second illustration of the sort of substantiality we require comes from *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), which *Grable* described as "[t]he classic example" of a state claim arising under federal law. In *Smith*, the plaintiff argued that the defendant bank could not purchase certain bonds issued by the Federal Government because the Government had acted unconstitutionally in issuing them. We held that the case arose under federal law, because the "decision depends upon the determination" of "the constitutional validity of an act of Congress which is directly drawn in question." Again, the relevant point was not the importance of the question to the parties alone but rather the importance more generally of a determination that the Government "securities were issued under an unconstitutional law, and hence of no validity."

*Id.* at 260–61 (citations omitted).

Here, VLSI purports to present an abuse of process claim regarding "what constitutes the regular prosecution of IPR proceedings", which are "federal administrative agency proceedings . . . governed by federal statutes and regulations." (ECF No. 1, at 7.) However, whether the actions that VLSI alleges that PQA took in the IPR proceedings—"evading discovery", "violating discovery rules", "filing pleadings containing misrepresentations", "serving unwarranted and harassing discovery on VLSI" and "forcing VLSI to defend against frivolous motions"—were "proper in the regular course of the IPR proceedings" cannot be deemed a substantial federal issue. (ECF No. 1-1 ¶ 78.) While important to the parties, the issue does not affect the operation of the federal system in the way observed in either *Smith* (which spoke to the constitutionality of an act of Congress) or *Grable* (which involved the strong federal interest of facilitating the collection of taxes).

To the extent VLSI's claims probe into "whether PQA's actions . . . violat[ed] [] federal regulations or statutes", (ECF No. 1, at 7), the claims are "'purely backward-looking . . . and require . . . fact-intensive inquiries into [PQA's] compliance with certain [federal laws governing

14

IPR].'" *Clayton v. Landmark Prop. Mgmt. Co.*, No. 4:20-cv-13, 2021 WL 281156, at *6 (W.D. Va. Jan. 28, 2021) (quoting *Burrell*, 918 F.3d at 385 (internal quotation marks omitted)). "Resolution of this fact-specific inquiry would have little impact on the overall operation of the [federal laws governing IPR procedures], even if it matters greatly to the parties in this case." *Clayton*, 2021 WL 281156, at *6. Thus, the abuse of process claim at bar does not present a substantial issue, even presuming it qualifies as "federal" under the *Gunn* test.

### B. PQA Waived its Argument That the Court Has Subject Matter Jurisdiction Over VLSI's Fraud Claim Because it Raises Substantial Federal Questions

#### 1. Standard of Review: Timing of Amendments to Notice of Removal

"[D]efendants have thirty days [after receipt of a copy of the initial pleading] to file 'a short and plain statement of the grounds for removal[.]'" *Wood v. Crane Co.*, 764 F.3d 316, 322 (4th Cir. 2014) (quoting 28 U.S.C. § 1446(a)). "[A]fter thirty days, district courts have discretion to permit amendments that correct allegations already present in the notice of removal." *Id.* at 323. However, "[c]ourts have no discretion to permit amendments furnishing new allegations of a jurisdictional basis." *Id.* "Federal courts, including courts in this district, have interpreted this principle as allowing defendants to amend their removal notices only when they are elaborating on an existing basis or ground for subject matter jurisdiction, but not where a defendant seeks to introduce a new ground or basis for subject matter jurisdiction." *Arlington Cmty. Fed. Credit Union v. Berkley Reg'l Ins. Co.*, 57 F.Supp.3d 589, 597 (E.D. Va. 2014) (citing *Wood*, 764 F.3d at 323). "[L]eave to amend should not be granted when a notice of removal completely omits an alleged jurisdictional ground, and the purported amendment seeks to add an entirely new basis for jurisdiction." *Britton v. Gardner*, No. 3:14cv683 (RCY), 2015 WL 163382, at *4 (E.D. Va. Jan. 13, 2015). "Also, some courts note that an important consideration in allowing a defendant to amend its notice of removal is whether the plaintiff

would be prejudiced by the amendment." *Arlington Cmty. Fed. Credit Union*, 57 F.Supp.3d at 597. "In short, '[t]he privilege of removal may be lost if it is not asserted in time and in conformity with the provisions of the statute.'" *Wood,* 764 F.3d at 323 (quoting Richard H. Fallon, Jr. et al., *Hart and Wechsler's The Federal Courts and the Federal System* 1433 (6th ed. 2009)).

### 2. PQA Improperly Asserts a New Basis for Jurisdiction in its Opposition to VLSI's Motion to Remand

In its Opposition to Plaintiff's Motion to Remand, filed on April 30, 2024, PQA argues for the first time that Plaintiff's "fraud claim necessarily raises disputed federal issues[.]" (ECF No. 25, at 23.) In its March 20, 2024 Notice of Removal, PQA only argues that Plaintiff's "allegations of *abuse of process* [in Count 1]. . . raise[] a substantial federal question[.]" (ECF No. 1, at 6 (emphasis added).) Respecting VLSI's fraud claim in Count 2, PQA's Notice of Removal merely states that "[t]o the extent Plaintiff's remaining claims (Counts 2–4) may not also raise the same federal issues, the Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over those remaining claims because they form part of the same case or controversy as claims where the Court has original jurisdiction." (ECF No. 1, at 9.)

PQA's argument that VLSI's fraud claim raises substantial federal questions falls outside the scope of its Notice of Removal because in Opposition to VLSI's Motion to Remand, PQA does ***not*** suggest that that VLSI's fraud claim "raises the same federal issues" as VLSI's abuse of process claim. On one hand, PQA alleges that VLSI's abuse of process claim "hinges exclusively on construction and application of federal laws and regulations governing IPRs" to determine "whether the alleged acts were proper and 'in the regular prosecution' of an IPR proceeding." (ECF No. 25, at 10; *see also* ECF No. 1, at 7.) On the other hand, PQA contends that VLSI's fraud claim "necessarily depends on whether and to what extent each [allegedly

16

false] statement impacted the PTAB's institution of PQA's IPR under governing federal law", a different allegation wholly absent from PQA's notice of removal. (ECF No. 25, at 8.)

In *Tincher v. Ins. Co. of State of Pa.*, another judge in this district confronted a diversity jurisdiction case in which a defendant argued for the first time in response to the plaintiff's motion to remand that a different defendant was fraudulently joined without "mov[ing] to amend its notice of removal to incorporate such allegations." 268 F.Supp.2d 666, 667 (E.D. Va. 2003). There, the Court concluded that even if the defendant had moved to amend its notice of removal, "this court would find that amendment could not be granted, because the allegation that [the other] defendant [] was fraudulently joined is missing entirely from the Notice of Removal", which was filed "well beyond the thirty-day time limit set out in 28 U.S.C. § 1446(b)." *Id.* at 667–68.

Similarly here, in its Opposition to VLSI's Motion to Remand, PQA raises a new jurisdictional argument that, in addition to abuse of process, VLSI's fraud claim in Count 2 raises a second substantial federal question: specifically "whether and to what extent the allegedly false representations impacted the PTAB's decision to institute PQA's petition." (ECF No. 25, at 23.) As in *Tincher*, PQA does so without seeking leave to amend its notice of removal. Because this new jurisdictional argument is absent from PQA's notice of removal and PQA failed to raise it until after the thirty-day removal period in 28 U.S.C. § 1446(b), this Court "ha[s] no discretion" to permit what would be an amendment of PQA's notice of removal. *See Wood*, 764 F.3d at 323; *Arlington Cmty. Fed. Credit Union*, 57 F.Supp.3d at 596. Indeed, allowing such an amendment would result in prejudice to VLSI, whose only notice of this

17

additional alleged basis for subject matter jurisdiction came in PQA's Opposition to Plaintiff's Motion to Remand. *See Arlington Cmty. Fed. Credit Union*, 57 F.Supp.3d at 597.

### C. Because VLSI's Abuse of Process Claim Does Not Raise a Substantial Federal Issue, the Court Cannot Exercise Supplemental Jurisdiction Over VLSI's Remaining State Law Claims

PQA asserts that "the Court [] has supplemental jurisdiction under 28 U.S.C. § 1367[9] over [VLSI's] remaining claims because they form part of the same case or controversy as claims where the Court has original jurisdiction." (ECF No. 1, at 9.) Because PQA has not met its burden of establishing that this Court has original jurisdiction over VLSI's state law abuse of process claim, *see Abraham*, 2011 WL 1790168, at *1, and because it improperly attempts to assert jurisdiction under VLSI's fraud claim, the Court cannot exercise supplemental jurisdiction over the remaining claims.

### IV. Conclusion

For the foregoing reasons, the Court will grant VLSI's Motion. (ECF No. 15.) The Court will remand this action to the Circuit Court for the City of Alexandria for further proceedings. The Court will deny as moot: (1) Defendant Joseph Uradnik's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), (ECF No. 3); (2)

---

[9] 28 U.S.C. § 1367(a) provides, in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

Defendant Patent Quality Assurance, LLC's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), (ECF No. 5); and (3) Defendants' Motion for Leave to File PQA's Revised Financial Interest Disclosure Under Seal and For Other Relief. (ECF No. 31).

    An appropriate Order shall issue.

Date: 2/13/25
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge